J-A03027-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| J.A.Z. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| P.J.J. | : | |
| | : | |
| Appellant | : | No. 1352 WDA 2018 |

Appeal from the Order Entered August 17, 2018
In the Court of Common Pleas of Blair County Civil Division at No(s):
2010-GN 4413

BEFORE:  BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    FILED MARCH 11, 2019

Appellant P.J.J. ("Father") appeals from the order denying his petition to modify the existing child custody order regarding his daughter, E.J. ("Child"), born in March of 2008, to Father and J.A.Z. ("Mother"). The order continued the award of primary physical custody to Mother, partial physical custody to Father, and denied Father's request for shared physical custody of Child in a 50/50 arrangement. The order also granted Mother's request, made at the custody hearing, for a reduction in Father's physical custody time.[1] We affirm.

_____

[1] Pursuant to the custody order on appeal, Father has partial custody every Wednesday after school until 8:00 p.m., and every other weekend from 6:00 p.m. on Thursday until Sunday night at 8:00 p.m., with a different schedule for summer vacation and holidays. The order on appeal eliminated the Sunday

_____
*  Retired Senior Judge assigned to the Superior Court.

The parties were married, and on November 22, 2010, Mother filed a complaint for divorce against Father, including a count seeking primary physical custody of Child. In February of 2014, the trial court entered the final divorce decree. Mother and Father both live in Hollidaysburg, Pennsylvania, approximately four blocks apart. Father, an employee at the retailer REI, is remarried, and he and his current wife have twin children. Mother is a substitute teacher and freelance writer. Child is academically advanced, has straight As, and creates videos for YouTube.[2]

On January 15, 2016, Father filed a petition to modify custody. Upon the consent of the parties, on February 26, 2016, the trial court entered a temporary order directing that the parties share legal and physical custody of Child and that Child reside with Mother in the marital home. On April 6, 2016, the trial court directed that the February 26, 2016 order remain in effect. On December 9, 2016, the trial court held an evidentiary hearing on Father's petition to modify custody. Thereafter, in an order entered on December 27, 2016, the trial court directed that the parties share legal and physical custody of Child and that Child continue to reside with Mother.

_____

overnight with Father, which had been in place under the existing December 20, 2016 custody order, because Child preferred to spend Sunday night at Mother's home and leave for school on Monday morning with Mother.

[2] For a more detailed presentation of the history of this matter, we direct the reader to the trial court's opinion in support of the order on appeal. Trial Court Opinion, 8/27/18, at 1-7.

On January 18, 2017, Father filed a motion for reconsideration of the December 27, 2016 order. The trial court held a hearing on the motion for reconsideration on January 30, 2017. In an order entered on February 1, 2017, the trial court denied Father's request for additional physical custody during the summer months. On June 9, 2017, the trial court entered a supplemental custody order incorporating the parties' agreement regarding the summer physical custody schedule.

On October 12, 2017, Father filed a petition for modification, requesting a 50/50 physical custody arrangement. On November 16, 2017, Father filed a request for a custody evidentiary hearing. In an order dated November 16, 2017, and entered on November 17, 2017, the trial court stated that, having reviewed the orders entered December 27, 2016, February 1, 2017, and June 9, 2017, it declined to modify the existing custody order pending the custody litigation process.

The trial court held custody evidentiary hearings on March 26, 2018, and June 18, 2018.[3] During the hearings, Father continued to seek a 50/50 physical custody arrangement, and Mother sought to reduce Father's period of physical custody.

_____

[3] At the hearing on March 26, 2018, Father testified on his own behalf. On June 18, 2018, Child testified in camera. Also on June 18, 2018, Mother's counsel cross-examined Father. Father's counsel questioned Father on re-direct examination, and Mother testified on her own behalf.

On August 17, 2018, the trial court entered the order that awarded shared legal and physical custody to the parties, with the schedule set forth above. Supra, at 1 n.1. Father timely filed a notice of appeal on September 14, 2018, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In addition, the trial court complied with Pa.R.A.P. 1925(a).

Father presents the following issues for our review, which we have renumbered for ease of disposition:

> I. Whether the trial court erred or abused its discretion by failing to order a shared 50/50 custody schedule between the parents and by fashioning a manifestly unreasonable custody order[,] reducing Father's periods of custody with the minor child, which is not in the best inter[e]st of the child?
>
> II. Whether the trial court erred or abused its discretion in finding that the child's preference to reside with Mother was a well[-]reasoned preference as required under 23 Pa.C.S.A. § 5328(a)(7)?
>
> III. Whether the trial court erred or abused its discretion in finding that Mother was more able than Father to maintain a loving, stable, consistent and nurturing relationship with the child because Mother has fewer family members to share her time with[,] making her more available to the child?
>
> IV. Whether the trial court erred or abused its discretion in finding that the mother consistently urges the child to think about Father and offers Father extra time to be with the child?

Father's Brief at 4-5.

Father's four issues challenging the trial court's custody order are interrelated. In all of his issues, Father argues that the trial court abused its

- 4 -

discretion or erred in refusing to award a 50/50 shared physical custody arrangement to him.

In his first issue, Father argues that the trial court erred or abused its discretion by failing to order a shared 50/50 custody schedule between the parents and by fashioning a manifestly unreasonable custody order, reducing Father's periods of custody with the minor child, which is not in the best interest of Child. Father's Brief at 36-49. Father contends that it is in the best interest of Child to have a 50/50 shared custody arrangement. Father argues that the proximity of his residence to Mother's house is only a few blocks, which makes his proposed custody arrangement possible and in Child's best interest. Id. at 40.

In his second issue, Father argues that the trial court erred or abused its discretion when it concluded that Child's preferences are well-reasoned. Father's Brief at 15-25. Father notes that Child, although academically gifted, is only ten years old. Father asserts that Child's reported stress about not attending school on time when in Father's care is unsupported by the record. Id. at 18-21. Father urges that Child's relationship with her half-siblings, whom she finds annoying, is extremely important, and should not be brushed aside merely because Child reports that she is more comfortable distancing herself from them. Id. at 22-25. Father argues that Child's family should not be limited to Mother and Father, but should include her siblings.

With regard to his third issue, Father argues that the trial court erred or abused its discretion in finding that Mother was the parent better able to maintain a loving, stable, consistent, and nurturing relationship with Child because Mother has fewer family members, making her more available to Child. Father's Brief at 25-29. Father asserts that the parties are equally able to maintain a loving, stable, consistent, and nurturing relationship with Child, despite having differences within his home as to family members. Id. at 26. Father claims that the differences between his work schedule and Mother's work schedule do not hamper his ability to provide Child with love that equals Mother's love of Child. Id. at 26-27.

In his final issue, Father contends that the trial court erred or abused its discretion in finding that Mother consistently urges Child to think about Father and offers Father extra time to be with Child. Father's Brief at 29-36. Father claims, instead, that the record demonstrates that Mother fails to encourage extra time between Father and Child. Id. Father asserts that, while there are some examples of Mother providing him some additional time with Child when convenient for her schedule, the record establishes that Mother takes a different approach when Father seeks additional time which would take away from Mother's time with Child.

Citing M.A.T. v. G.S.T., 989 A.2d 11, 21 (Pa. Super. 2010) (en banc), Father urges that, where the record is sufficiently developed, yet the trial court has abused its discretion, we may exercise our discretion, and substitute our

discretion for that of the trial court. Father's Brief at 14, 49. Father, in fact, implores this Court to exercise its discretion and enter an order providing Mother and Father with a shared 50/50 custody arrangement, which he asserts is in Child's best interest.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In M.A.T., we stated the following regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

Id. at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has stated:

[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

Bulgarelli v. Bulgarelli, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted). With any custody case decided under the Act, the paramount concern is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338.

Section 5323 of the Act provides for the following types of custody awards:

(a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the best-interest factors that the trial court must consider. E.D. v. M.P., 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "[a]ll of the factors listed in section 5328(a) … when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Section 5328(a) of the Act provides as follows.

§ 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

Further, we have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa. Super. 2013), appeal denied, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V. v. S.T., 87 A.3d 818, 822-823 (Pa. Super. 2014).

We have reviewed the briefs of the parties, the relevant legal authority, the certified record before us, and the trial court's opinion filed on September 28, 2018, in compliance with Pa.R.A.P. 1925(a).[4] In its opinion, the trial court thoroughly addressed Father's issues in the order presented in his Rule 1925(b) statement, as follows:

1. The trial [c]ourt erred and/or abused its discretion by failing to order a shared 50-50 custody schedule between

_____

[4] We note that the trial court also filed, on August 27, 2018, a separate opinion in support of the custody order. In the opinion, the trial court presented a detailed analysis reflecting its understanding and consideration of the relevant statutory factors set forth in Section 5328. Trial Court Opinion, 8/27/18, at 8-19.

- 11 -

the parents and by fashioning a manifestly unreasonable custody order reducing [F]ather's periods of custody with the minor child which is not in the best interest of the child.

Section 5323 of the Act provides for the following types of awards:

> (a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the [c]ourt may award any of the following types of custody if it in the best interest of the child:
>
> (1) Shared physical custody.
> (2) Primary physical custody.
> (3) Partial physical custody.
> (4) Sole physical custody.
> (5) Supervised physical custody.
> (6) Shared legal custody.
> (7) Sole legal custody.

23 Pa.C.S. § 5323.

In this case, the [c]ourt crafted an order under which the parents shared legal and physical custody of their child. In its Opinion in Support of Order dated August 27, 2018, the [c]ourt cited the applicable case law governing custody starting on page 8 of its [O]pinion, and analyzed the relevant custody factors, beginning on page 9 of its Opinion, in coming to its conclusions about what was in the best interest of the child. There is nothing in the law that dictates that the [c]ourt must order a shared 50-50 custody schedule between the parents, unless the [c]ourt finds it to be in the best interests of the child.

In this case, Father's main focus in the litigation is to achieve a mathematically precise 50-50 custody split. He received the impression the last time he was before the [C]ourt in custody litigation that the judge would move him to a complete 50-50. (Transcript [N.T.] March 26, 2018, p. 13 l. 8-20). He believes that this is a natural split. He believes that he [sic] if he gets less than a 50-50 split[,] he is being presented as a second[-]class option. ([Id.], page 32). Father testified that it is a zero-sum game, and he does not feel that his family or he should be considered as second-class in this situation. (Id., p. 32-33.)

- 12 -

Father presented in testimony as being more concerned about achieving a 50-50 split for himself than caring about the effect of the order on the child. It would not be in the child's best interest to craft an order that achieves a 50-50 split solely because that is what Father wants. The order the [c]ourt crafted gave Father every Wednesday after school until 8 PM with the child[,] and every other weekend from 6 PM on Thursday until Sunday night at 8 PM. This maintains a consistent contact between Father and the child[,] so as to maintain their bond.

The [c]ourt respectfully submits that this Order is not manifestly unreasonable. The [c]ourt eliminated one Sunday night from Father's schedule, based on the child['s] interview[,] when the child indicated that it made her very anxious to have to go to school on Monday morning from Father's house. She said she felt more comfortable going to school with her Mother on Monday morning, because she knows they will be early. The child presented as a very anxious child, who mentioned subjects like death in her interview with the [c]ourt. The [c]ourt believes that it is in the child's best interests to craft a custody order which will lessen her anxiety about being late to school.

2. The trial [c]ourt erred and/or abused its discretion in finding that the subject minor's preference to reside with [M]other was a well-reasoned preference as required by 23 Pa.C.S. 5328(a)(7).

The [c]hild was born [in March of 2008]. She was 10 years old when the [c]ourt interviewed her. Although she is 10 years old, the child is extremely intelligent. Both parents agree she does extremely well in school. She is in the gifted program. She has written books, and makes her own YouTube videos. She was very communicative in the interview. She used vocabulary and concepts older than her age. For example on page 2 of the transcript, when asked by the [c]ourt to tell some details about her life, the child responded that she has had "anxiety a bit".

When asked to define anxiety, she responded that it was kind of like stress. When asked to define stress, she defines it as a feeling like you had weight on your shoulders and that you don't feel free, in a sense. (Child interview transcript, [6/18/18 at] pages two and three). When asked what she worries about, the child responded, "Stress, death, religion, feelings of a lot of my friends and family." (Id. p. 3 l. 22-23). She was comfortable with

and understood abstract concepts. The child had a good memory and was able to recite events in detail. She credibly testified that school is easy for her. When asked whether there is anything in which she is interested that she is not learning at school, "I'd like to learn more about the periodic table." (Id. p. 7).

The child testified credibly that she feels more comfortable at Mother's house because Mother doesn't try to make her do things with which she is uncomfortable. (Id. p. 12). She testified she does not like it when her stepmother makes her watch the twins. She testifies that she spends more time with her [m]other than her [f]ather, (Id. p. 13). She stated credibly that she would not enjoy a week on-week off schedule between her [m]other and [f]ather because she would feel very imbalanced. She says that she does not take well to change. (Id. p. 15 l. 5). She said she would rather be at her Mother's [home]. (Id. p. 16 l. 13).

The [c]ourt did not base its custody determination solely on the minor's preference, but finds that this particular child, at 10 years of age, was capable of expressing a well-reasoned preference. She stated clearly her preference for going to school on Monday morning from her Mother's house and with her Mother. (Id. p. 14). She does not like to be late to school, and it increases her obvious and stated anxiety. This is a well-reasoned preference for not staying at Father's house Sunday nights. She further stated that she does not sleep well at Father's house because of the three-year-old twin stepsiblings there, who make a lot of noise at night. (Id. p. 8) ("My brother and sister at my dad's scream all night-well, not all night but it's hard to sleep with them talking over there"), it is not in her best interest to go to school tired because of not being able to sleep because of noise of other children at her Father's house.

3. The trial [c]ourt erred and/or abused its discretion in finding that [M]other was more able than [F]ather to maintain a loving, stable, consistent and nurturing relationship with the subject minor child[,] because [M]other has fewer family members to share time with making her more available to the child.

Although the trial [c]ourt did find that Mother was more able than Father to maintain a loving, stable, consistent and nurturing relationship with Child, its finding was not based solely on the fact

- 14 -

that Mother has fewer family members to share time with, making her more available to the child.

It is true that Mother has more time to be available to the child. Part of the reason is because Father has a wife and two 3-year-old twins at home to pay attention to besides this child, whereas Mother does not have a new family. Part of the reason is because Mother's work hours are more conducive to her spending time with the child than are Father's work hours. (The [c]ourt is not criticizing Father for having a new family or for having more extensive work hours than Mother). However, the reason the [c]ourt found that Mother was more able than Father to maintain a loving, stable, consistent and nurturing relationship with the child was the totality of the testimony.

The testimony, beginning on page 10 of the June 18, 2018 transcript, was that Mother lives in the former marital residence, which has been the child's home since she was one. The child is extremely comfortable at Mother's residence. Mother was the primary caretaker for the first full year of the child's life because Father was only home on the weekends. The parties agreed when they were married that Mother would be a stay[-]at[-]home mother. (Id. p. 13). Mother's credible testimony was that for 80% of the child's life the child has been primarily with Mother. (Id. p. 12). Mother is a substitute teacher and is available essentially on a 24/7 basis for the child during the summer because she does not substitute teach in the summer. (Id. p. 22). Mother has taught the child to sew and knit. They also go camping in summer, and[,] in winter[,] they go hiking and watch movies and go swimming. Mother was a homeroom mother for the child in the past school year. She has been homeroom mother or assistant to the homeroom mother every other year. She also coaches the child in soccer. She has a strong bond with the child. (Id. p. 24). The totality of the testimony established that the Mother is more able than Father to provide stability and consistency and love for the child. This is not to say that Father is incapable of providing stability and consistency and love. Indeed, the parties did not dispute that the other was capable of providing these things to the child, and did provide them. The factor asks the [c]ourt to determine which parent is more able to do these things. The [c]ourt finds that in this case, based in a totality of the testimony, it is Mother.

4. The trial [c]ourt erred and/or abused its discretion in finding that the mother consistently urges the child to think about [F]ather and offers [F]ather extra time to be with the child.

This is a credibility determination. The [c]ourt found that Mother's credible testimony bore out these things. Mother testified credibly that, at one point, Child became interested in using an old manual typewriter, and that this development was shared with Father by sending him a picture of [C]hild using the typewriter. (6/18/18 N.T. at p. 26, 1.20). She testified credibly that she taught the child how to knit, which has helped her with stress and anxiety, and that every year they make people things for Christmas including Father. (Id. p. 27 line 3).

On page 38 of the same transcript, [Mother] testified and credibly gave examples of how she had encouraged the child to have a good relationship with her [f]ather. [Mother] testified that she campaigned hard for Father and the child to have phone calls together every night. [Mother] says that when she has to go to work at the YMCA[,] she offers that the child go to her father's [home,] even when it is her day to have the child. [Mother] credibly testified that she talks to the child about getting her [f]ather gifts. [Mother] testified that she and the child were in Michigan[,] and the child asked whether she could buy jam for her [f]ather[,] and Mother said absolutely[,] and purchased the gift. [Mother] testified credibly that she helps the child create Father's Day cards. She testified credibly on page 39 that there are lots of times when she had opportunities to have the child with her family, and [Mother] has offered that time to Father. ([Id.,] p. 39, l. 5).

[Mother] testified credibly that in March, 2016, she went away on a trip and offered that time to Father. She had the opportunity to go to Paris in November, 2017, and testified credibly on page 39 that she gave Father first choice to have that time with the child instead of other people who would have liked to stay with [Child]. [Id. at p. 39, at l. 21-25.] [Mother's] testimony on page 40 was that[,] frequently, when Father is supposed to pick the child up at noon, Mother will ask him whether he wants to have [Child] at 9:30 in the morning. [Id., at p. 40, at l. 18-20.] [Mother] testified that she has invited Father and stepmother to Child's birthday parties every year that [Mother] has had one. [Id. at l. 23-25.]

- 16 -

The [c]ourt found [M]other to be credible when she said these things. The remainder of the testimony does not show the [c]ourt's conclusion about the Mother's credibility to be manifestly unreasonable. Therefore, the reviewing Court should support the [trial court's] credibility determination.

Trial Court Opinion, 9/28/18, at 4-10 (emphases in original).

After a careful review of the record in this matter, we reject Father's invitation to substitute our judgment for that of the trial court. We remind Father that we may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. C.R.F., 45 A.3d at 443. Here, it is our determination that the trial court's conclusions do not involve an error of law and are not unreasonable as shown by the evidence of record. While Father might desire additional custodial time with Child, the trial court adequately explained its findings, and they are supported by the competent evidence in the record. Hence, we sustain the trial court's determination pursuant to C.R.F.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2019

- 17 -